UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
REGINALD BOUDINOT, et al.,

                Plaintiffs,

        -against-                           09 Civ. 10163 (LAK) and
                                                   consolidated cases

RALPH W. SHRADER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                Mark Carroll Kelly
                KEAHON, FLEISCHER, DUNCAN & FERRANTE
                *Attorneys for Plaintiffs*


                Rebecca S. Giltner
                Everett C. Johnson, Jr.
                J. Christian Word
                LATHAM & WATKINS, LLP
                *Attorneys for Booz Allen Hamilton Defendants, Carlyle
                Defendants & Explorer Defendants*


                Karl Geercken
                ALSTON & BIRD, LLP
                *Attorneys for Credit Suisse Securities (USA) LLC*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiffs Pasternack, Boudinot, and Kocourek are former officers of defendant Booz

Allen Hamilton Inc. ("BAH").  They sue against BAH, its former chief executive officer Shrader,

and a number of other former BAH officers[1] (collectively, "BAH Defendants"), alleging securities fraud, RICO, ERISA, and various common law claims.  In addition, they assert RICO and state law aiding and abetting claims against the Carlyle Group, Carlyle Partners V, L.P., Explorer Coinvest LLC, Explorer Holdings Corporation, and Explorer Investor Corporation (collectively, "Carlyle Defendants").[2]

At the heart of the consolidated complaint is the allegation that the BAH Defendants orchestrated a secret plan to force certain BAH officers, including plaintiffs, to retire and sell their shares under BAH's officers' stock rights (or option) plan ("SRP") and/or redeem their rights under its shadow stock plan ("SSP") before BAH's government sector was sold to the Carlyle Group in 2008 ("Carlyle Transaction").[3]  Plaintiffs allege that this scheme wrongfully denied them economic benefits – benefits that they would have gained had they continued to hold their SRP shares or their SSP rights until the Carlyle Transaction – so that the remaining BAH officers would receive even

---

[1]    The individual defendants remaining in this case are: Ralph W. Shrader, C.G. Appleby, Samuel R. Strickland, Joseph E. Garner, Dennis Doughty, Francis J. Henry, Christopher M. Kelly, Daniel C. Lewis, Joseph W. Mahaffee, John D. Mayer, Patrick F. Peck, Gary D. Ahlquist, Martin J. Bollinger, Lloyd W. Howell, Jr., William C. Jackson, Pamela M. Lentz, Eric A. Spiegel, Shumeet Banerji, Peter Bertone, Christian Burger, and Joe Saddi ("Individual BAH Defendants").

[2]    Plaintiffs initially asserted claims against Credit Suisse Securities (USA) LLC ("Credit Suisse") as well, but they have been dismissed.  DI 37.

[3]    Consolidated Complaint ("Cpt.") ¶¶ 6-14.

As SRP shares were not traded on a public market, the roughly 280 shareholders in the SRP could sell their shares only to BAH.  Under the SSP, instead of earning "shares," officers earned "shadow stock" – contractual rights that were equivalent, more or less, to stock options received under the SRP because the "book value" of the "shadow stock" followed BAH's book value.  *Id.* ¶¶ 147-49.

For convenience, benefits earned under each plan are referred to as "SRP shares" and "SSP rights."  This opinion will refer also to "selling SRP shares" and "redeeming SSP rights."

3

higher profits.[4]

The matter is now before the Court on defendants' motions to dismiss the consolidated complaint.[5]

*Facts*

Although these motions address the face of the pleading, the defendants have submitted several additional documents.  Two of them – the SRP and the Swenson Memorandum[6] – effectively are incorporated by reference in the consolidated complaint and therefore properly are considered on these motions.[7]  The rest are not.  As the Court declines to convert the motions into motions for summary judgment, it excludes the remainder from consideration.[8]  Accordingly, the well-pleaded factual allegations of the consolidated complaint, as supplemented by these two documents, are deemed true for purposes of these motions.

---

[4]
    *Id.* ¶¶ 2, 5, 6, 126, 140.

    Kocourek purports to sue both individually and as a purported representative of the SRP and SSP and alleges that the plans themselves lost billions of dollars as well.  *Id.* ¶ 9.

[5]
    DI 20; DI 21.

[6]
    Giltner Decl., Exs. B, G.  The Swenson Memorandum sheds light on whether the SRP was an ERISA plan.  *Id.*, Ex. G.

[7]
    *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

[8]
    *See* FED. R. CIV. P. 12(b), (c); *Gurary v. Winehouse*, 190 F.3d 37, 42 (2d Cir. 1999).

4

*Plaintiffs' Employment at BAH*

Plaintiffs Pasternack, Boudinot, and Kocourek began working at BAH in 1976, 1991, and 1987, respectively.[9]  At all relevant times during their employment, BAH was a consulting firm with commercial and government sectors.  It was incorporated in Delaware and headquartered in McLean, Virginia.[10]

BAH sponsored two "stock" plans, the SRP and the SSP.  Pasternack and Boudinot participated in the SRP, and Kocourek participated in both.[11]

The SRP governed the issuance of BAH stock options to officers and the subsequent repurchase of BAH shares in connection with their retirements.[12]  Under its terms, the BAH board awarded stock options periodically, and officers were allowed to exercise 10 percent of these options each year.[13]  Within 60 days prior to or following the date of retirement, officers were entitled to exercise all previously unexercised options, and BAH had the right to purchase their SRP shares at book value starting two years after they retired.[14]  If an officer was terminated for cause, however,

---

[9]

Cpt. ¶¶ 115, 127; DI 23, at 2.

[10]

Cpt. ¶ 25.

Although BAH went public in 1970, the firm repurchased all non-employee owned shares in 1975.  *Id.* ¶¶ 44-45.

[11]

*Id.* ¶¶ 1, 126, 140.

[12]

Giltner Decl., Ex. B [hereinafter "SRP"], at 1.

[13]

*Id.* at 2-3.

[14]

*Id.* at 4-5.

BAH had the right, but not the obligation, to purchase an officer's SRP shares two years after

he or she forfeited all unexercised stock options and was required to sell all shares to BAH immediately.[15]

   The SSP provided BAH officers based outside the United States with post-retirement payments that were designed to be equivalent to the proceeds they would have received had they participated in the SRP.[16]  Under the SSP, officers earned "shadow stock" – contractual rights that were equivalent, more or less, to stock options received under the SRP because the "book value" of the shadow stock followed BAH's book value.[17]  Officers receiving SSP rights would benefit as the value of the shadow stock increased during the lives of the grants because they could redeem their SSP shadow stock for "book value" once they retired.  While the SRP explicitly provided that BAH could purchase SRP shares from officers two years after they retired, the parties dispute when BAH could require retired officers to redeem their SSP rights.[18]

   Pasternack, Boudinot, and Kocourek retired in 2004, 2005, and 2007, respectively. Roughly two years after Pasternack and Boudinot retired, BAH purchased their SRP shares for book

---

[15]   the retirement date.  Although BAH usually purchased SRP shares from retired officers at or near the two-year mark, there occasionally were slight delays.  BAH did not purchase Pasternack's SRP shares until early 2007 although he retired in late 2004.

[15]    *Id.* at 3.

[16]    Cpt. ¶¶ 146-48.

[17]    *Id.* ¶¶ 147-48.

[18]    Kocourek alleges that he should have been allowed to hold his SSP rights for two years following his retirement.  BAH asserts, however, that it was within its rights to require Kocourek to redeem his SSP rights on or near his retirement date.

value.[19]  When Kocourek retired, he was required to redeem his SSP rights immediately and received a payment that was based on the "book value" of his shadow stock at the time.[20]

*The Alleged Fraudulent Scheme*

Plaintiffs allege that Shrader and other Individual BAH Defendants – without plaintiffs' knowledge and before they retired – devised a scheme to split the commercial and government sectors of BAH and to effect a management-led leveraged buy-out ("LBO") of the government sector.[21]  They assert that the scheme included forcing, threatening, and fraudulently inducing plaintiffs to retire so that they would be required, under the terms of the SRP and SSP, to sell their SRP shares and surrender their SSP rights before any such LBO occurred.  The alleged purpose of doing so was to ensure that the large profits from selling BAH's government sector would be shared by fewer remaining officers, thereby increasing the profits of each.

The specific allegations of the three plaintiffs vary in detail, but the overall picture is similar.  Pasternack alleges that Individual BAH Defendant Lewis falsely told him in 2004 that the Partners Compensation Committee ("PCC") had decided that Pasternack would be terminated for cause unless he resigned immediately.[22]  Boudinot claims that he was told that his 2004 appraisal

---

19

    *Id.* ¶¶ 126, 140.

20

    *Id.* ¶¶ 148-49, 162-63.

    As Kocourek retired in 2007, he was able to sell his SRP shares after the Carlyle Transaction.  His SRP shares therefore are not relevant for the purposes of these motions to dismiss.

21

    *Id.* ¶¶ 20-21.

22

    *Id.* ¶¶ 118, 120.

assessment was very poor, that it would be forwarded to the PCC, and that he would be terminated for cause unless he retired.[23]  Finally, Kocourek alleges that, in 2007, Shrader falsely represented to him that no "strategic transaction" was in BAH's future and, based on that information, he moved to Singapore and retired.[24]  Boudinot and Pasternack allegedly were required to sell their SRP shares and Kocourek was forced to surrender his SSP rights in 2007.[25]

*The Carlyle Transaction*

In May 2008 – roughly a year after Boudinot and Pasternack sold their SRP shares and Kocourek surrendered his SSP rights – BAH approved a spin-off of its commercial sector[26] and a sale of its remaining stock to the Carlyle Group at a firm valuation of $2.54 billion.[27]  The price paid for BAH's government sector was more than four times its book value, but plaintiffs assert that it represented only 50 to 60 percent of its fair value.[28]

The profits that BAH officers received from the Carlyle Transaction allegedly were significant.  Plaintiffs assert that the consideration they received for their SRP shares and SSP rights

---

[23]

    *Id.* ¶¶ 133-34.

[24]

    *Id.* ¶¶ 155-56.

[25]

    In addition to forcing plaintiffs to retire and sell their BAH shares and surrender their SSP rights before the Carlyle Transaction, the scheme allegedly included several other acts that are outlined in the consolidated complaint.  *Id.* ¶¶ 20-24, 94-166, 262, 342-56.

[26]

    BAH's commercial sector was spun-off to BAH's shareholders in the form of stock in a new entity Booz & Co., Inc.  *Id.* ¶ 6.

[27]

    *Id.*

[28]

    *Id.* ¶¶ 5, 8.

was less than a fifth of what they would have received had they been able to sell their SRP shares and surrender their SSP rights as part of or after the Carlyle Transaction.[29]

*Prior Litigation Involving BAH, this Alleged Scheme, and the Carlyle Transaction*

Litigation involving this alleged scheme and the Carlyle Transaction has been addressed previously by this and other courts.[30]  Two prior state court suits are particularly pertinent here because defendants rely on them in support of their motions to dismiss.

First, Kocourek sued BAH in New York state court alleging breach of contract, unjust enrichment, and fraud claims related to the redemption of his SSP rights.[31]  He alleged that BAH wrongfully forced him to surrender his SSP rights immediately upon retirement instead of allowing him to redeem those rights two years later and thus after the Carlyle Transaction.  That court dismissed his breach of contract and unjust enrichment claims on statute of frauds grounds, and Kocourek discontinued his fraud claims with prejudice.[32]  Defendants argue that many of Kocourek's ERISA and common law claims could have been brought in the prior state court suit and therefore are precluded.[33]

---

[29]

    *Id.* ¶ 5.

[30]

    *See Nemec v. Shrader*, No. 09 Civ. 7466 (LAK), 2010 WL 3958655, at *1 (S.D.N.Y. Sept. 27, 2010); *see also Rich v. Shrader*, No. 09-CV-0652, 2011 WL 4434852, at *1 (S.D. Cal. Sept. 22, 2011); *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010); *Kocourek v. Booz Allen Hamilton Inc.*, 71 A.D.3d 511, 900 N.Y.S.2d 1 (1st Dep't 2010).

[31]

    *See Kocourek*, 71 A.D.3d at 511, 900 N.Y.S.2d at 1.

[32]

    *Id.*; *see* DI 23, at 12.

[33]

    DI 23, at 12-14.

9

Second, other former BAH officers made similar claims based on their retirements and the Carlyle Transaction in Delaware state court.  The Delaware courts, however, rejected the claims and held that no duty had been breached because those plaintiffs received exactly the benefits they bargained for under the SRP.[34]  Defendants assert that the these Delaware judgments are persuasive and suggest that Pasternack's and Boudinot's common law breach of good faith and fair dealing claim should be dismissed for the same reason.

*The Consolidated Complaint and the Motions*

Plaintiffs collectively allege seventeen purported causes of action in their 122-page consolidated complaint, including a securities fraud claim (Count 7), RICO claims (Counts 1-3), ERISA claims (Counts 4-5, 9, 12, and 14), various common law fraud claims (Counts 6 and 8), and an aiding and abetting claim under state law (Count 13).[35]  Counts 10, 15, 16, and 17 are styled as causes of actions but, in fact, do nothing more than seek particular remedies based on the claims asserted elsewhere.

The BAH and Carlyle Defendants maintain that the pleadings fail to state any claim upon which relief may be granted.  They assert also that many claims are barred by the applicable statutes of limitations, claim preclusion, or the Private Securities Litigation Reform Act ("PSLRA").

---

[34]

*Nemec*, 991 A.2d at 1130.

[35]

DI 14.

*Discussion*

I.     *Securities Fraud*

Plaintiffs Boudinot and Pasternack allege that they were defrauded in violation of the federal securities laws (Count 7).  The essence of their claims is that the Individual BAH Defendants formed a secret plan to split BAH and sell the government sector so that individuals holding BAH shares at the time of the anticipated sale would receive large profits.  Boudinot and Pasternack assert that the existence of this plan was material information that should have been, but was not, disclosed to them before they retired.  They contend that they would not have retired if the plan had been disclosed, that they would have kept their BAH shares, and that they would have profited greatly from the Carlyle Transaction.[36]   The Individual BAH Defendants contend that these claims, whatever their merit, are barred by the statute of limitations.

The operative statute is Section 1658(b) of the Judicial Code,[37] which provides in relevant part that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance . . . concerning the securities laws . . . may be brought not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."[38]  As this action was commenced on December 14, 2009, these claims are barred if the alleged violations took place before December 14, 2004.

In this case, the alleged fraud consisted of the failure to disclose the existence of the alleged scheme to sell BAH's government sector at the time that Boudinot and Pasternack were

---

[36]     Cpt. ¶¶ 421-22.

[37]     28 U.S.C. § 1658(b).

[38]     *Id.*; *see* DI 23, at 9; *see also Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1790 (2010).

11

induced to retire, thus triggering their obligations under the SRP to sell their shares to BAH.  In reliance on the allegedly fraudulent non-disclosure, Pasternack resigned some time in spring 2004, effective November 30, 2004,[39] and Boudinot resigned in September 2004, effective March 31, 2005.[40]

Boudinot and Pasternack nevertheless assert that their securities claims are timely because the five-year period did not start running until they sold their BAH shares in 2007 and suffered their alleged injury. In other words, Boudinot and Pasternack assert that Section 1658(b)(2) operates as a statute of limitations, with their claims accruing when they suffered injury. Defendants, on the other hand, contend that the five-year period in the statute is a statute of repose and that the period runs from the date of the alleged securities law violation.[41]

Courts in this district have treated Section 1658(b)(2) as a statute of repose and consistently stated that the five-year period begins to run from the time that the allegedly fraudulent

---

[39] Cpt. ¶¶ 118-26.

[40] *Id.* ¶ 140.

[41] *See Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 n.1 (7th Cir. 1987) ("A period of limitation bars an action if the plaintiff does not file suit within a set period of time from the date on which the cause of action accrued.  In contrast, a period of repose bars a suit a fixed number of years after an action by the defendant . . . even if this period ends before the plaintiff suffers any injury.").

representations were made.[42]  In *Stryker v. Stelmak*,[43] for example, the court noted that the "date of

the actual violation occurred . . . when defendants informed [the plaintiff] that Oxford Global was

being deactivated, and allegedly lied to him about the stock shares not being distributed."[44]

Furthermore, the two circuits that have addressed this issue directly both have treated Section

1658(b)(2) as a statute of repose and held that "the repose period applicable to . . . [Section]

1658(b)(2) begins to run on the date of the alleged misrepresentation."[45]

   This Court agrees.  It therefore concludes that the five-year period began to run in

spring 2004 for Pasternack and in September 2004 for Boudinot because those times are when the

alleged misstatements, omissions, and threats were made.[46]  As the initial complaint was not filed

---

[42]

   *See, e.g.*, *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 355 (S.D.N.Y. 2011); *Scantek Med., Inc. v. Sabella*, 583 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) ("The alleged violations . . . are the statements in Scantek's Forms 10K for the years ending June 30, 2001 and 2002 . . . and the written representations from April 24, 2002 and January 14, 2003 . . . . The counterclaims and third-party complaint were filed in February 2008, more than five years after these alleged violations occurred.").

[43]

   No. 06 Civ. 1322, 2006 WL 3292457 (S.D.N.Y. Nov. 14, 2006).

[44]

   *Id.* at *5.

[45]

   *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200-01 (3d Cir. 2007); *see McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930-32 (7th Cir. 2011).

[46]

   Cpt. ¶¶ 118-20, 131-40.

   Boudinot argues also that the alleged violations did not occur until he retired on March 31, 2005 while the BAH Defendants assert that they occurred at or before the date in September 2004 when he tendered his resignation.  Boudinot's argument is not persuasive.

   "[T]he time of a 'purchase or sale' of securities within the meaning of Rule 10b-5 is to be determined as of the time when the parties to the transaction are committed to each other." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972).  *Accord*, *Vacold LLC v. Cerami*, 545 F.3d 114, 116, 121-22 (2d Cir. 2008).  This rule governs for limitations as well as any other purposes. *Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2d

until December 14, 2009, Pasternack's and Boudinot's securities fraud claims are time-barred under Section 1658(b)(2) and must be dismissed.[47]

## II.   RICO

Plaintiffs seek damages under the RICO statute against the BAH and Carlyle Defendants (Counts 1-3), claiming that these defendants conducted and conspired to conduct the affairs of the alleged enterprise through a pattern of racketeering activity.[48]  The BAH and Carlyle Defendants argue that the RICO claims are barred by the applicable four-year statute of limitations, that Kocourek lacks standing to bring them on behalf of the SRP and SSP, that Kocourek's claims are precluded because of his previous state court litigation, and that all RICO claims are barred by

---

Cir. 1992).  And it applies even where the later consummation of the transaction "is contingent upon the occurrence of future events, such as satisfaction of a financing condition, at least when the contingency is not so unlikely that it renders the stock transaction extremely speculative."  *Vacold LLC*, 545 F.3d at 122.

Boudinot tendered his resignation in September 2004, effective March 31, 2005.  Accepting the truth of his allegation that he could have rescinded his resignation at any time prior to the latter date (Cpt. ¶ 141), the question becomes whether he has alleged facts demonstrating that withdrawal of his resignation during that time period was sufficiently likely as to have rendered his September 2004 commitment to retire speculative.  Not only has he failed to allege such facts, but the allegations of the complaint make clear that there was no meaningful likelihood of withdrawal.  It alleges that Boudinot tendered his resignation "[o]ut of fear of the economic consequences" of refusing to have done so, including termination for cause and the resulting forfeiture of valuable benefits.  *Id.* ¶¶ 136-40.  The chance that he would have changed his mind was *de minimis.*  He therefore became committed, for all meaningful purposes, to retirement in September 2004, and the five-year period of repose commenced at that time.

[47]

As the statute provides that a claim "may be brought *not later than the earlier of –* (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation," there is no need to address whether Pasternack's and Boudinot's claim is barred under the two-year period.  *See* 28 U.S.C. § 1658.

[48]

18 U.S.C. § 1962(c); Cpt. ¶¶ 335-59.

14

the PSLRA.[49]  As this Court holds the PSLRA issue dispositive, it does not consider the other

arguments raised in the motions to dismiss.

Section 1961(1) of RICO defines "racketeering activity" by reference to particular

acts and offenses that constitute acts of racketeering, or predicate acts.[50]  When RICO first was

enacted, fraud in the sale of securities constituted an act of racketeering action.  But Section 107 of

the PSLRA amended Section 1964(c) of RICO to provide that "no person may rely upon conduct

that would have been actionable as fraud in the purchase or sale of securities to establish a violation

of section 1962."[51]  The PSLRA therefore "was [designed] to prevent litigants from using artful

pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages."[52]

Courts determine whether the PSLRA applies by focusing on whether the fraudulent

conduct underlying RICO claims is "in connection with the purchase or sale of any security."[53]  The

Supreme Court has held that the phrase "in connection with" should be "construed not technically

---

[49]

DI 23, at 6-7, 9-11; DI 24, at 1, 3-4.

[50]

18 U.S.C. § 1961(1).

[51]

*Id.* § 1964(c); *see Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281 (S.D.N.Y. 2009) (the PSLRA "bars private causes of action under RICO for predicate acts that describe conduct that would otherwise be actionable as securities fraud").

[52]

*See, e.g.*, *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329-30 (3d Cir. 1999); *see also MLSMK Inv. Co. v. J.P. Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("We conclude that section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant.").

[53]

15 U.S.C. § 78j(b).

and restrictively, but flexibly to effectuate [the statute's] remedial purposes,"[54] and the Second Circuit has stated that "[t]he fraud must be integral to the purchase and sale of the securities in question."[55]

Here, plaintiffs' RICO claims are based on defendants' alleged fraudulent acts and misrepresentations that forced or induced them to retire and sell their SRP shares and surrender their SSP rights before the Carlyle Transaction occurred.[56] Plaintiffs assert specifically that "[the alleged] principal purpose of the forced expulsion from employment was the desire to keep [plaintiffs] from achieving enhanced benefits from the [Carlyle Transaction] . . . ."[57] The RICO claims therefore are based on alleged fraud "in connection with" the sale of a security and are foreclosed by the PSLRA.

## III.    ERISA Claims Relating to the SRP

The plaintiffs allege several ERISA claims against the BAH Defendants in relation to the SRP.  The BAH Defendants argue that these claims are insufficient because the SRP was not a qualified ERISA plan.[58]  Rather, they argue, the SRP was a "bonus plan" that was not subject to ERISA.  Plaintiffs dispute this, contending that the SRP was covered by ERISA because all benefits

---

54

        *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (internal quotations and citations omitted).

55

        *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 31 (2d Cir. 2005).

56

        Cpt. ¶¶ 20-24.

57

        *Id.* ¶ 5.

        Plaintiffs did not address the PSLRA bar specifically in their opposition to the motions to dismiss except to assert that their RICO claims are pled adequately.

58

        DI 23, at 22-28.

were "systematically deferred" until employees retired.[59]

A plan is subject to ERISA if the "plan, fund, or program . . . (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ."[60]  A bonus plan exists where an employer makes payments "to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."[61]

To determine whether a specific arrangement qualifies as an ERISA plan, courts generally analyze several factors, including: (1) its express purpose, (2) whether the employer maintains discretion over awarding benefits, (3) whether the payments are given on the basis of work performed, (4) whether the payments systematically are deferred until the end of employment, (5) the manner in which the company promoted the plan, and (6) whether penalties were imposed to deter redemption until an employee retired.[62]

In this case, the express purpose of the SRP was "to enable Officers . . . of the Company to purchase shares of the Company's stock and to provide incentives for such Officers to

---

[59]

    *See* DI 30, at 2-12.

[60]

    29 U.S.C. § 1102(2)(A).

[61]

    29 C.F.R. § 2510.3-2.

[62]

    *See Rich*, 2011 WL 4434852, at *7; *see also Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 188-94 (3d Cir. 2003); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999); *Kaelin v. Teneco, Inc.*, 28 F. Supp. 2d 478, 486-87 (N.D. Ill. 1998).

17

continue to serve as employees of the Company and its subsidiaries."[63]  The stated purpose makes no mention of deferring benefits until retirement.  It thus tends to suggest that the SRP was not an ERISA plan.[64]

Second, the SRP provided BAH's board with sole discretion to decide when and to whom to grant stock options under the SRP.[65]  The fact that the board had such discretion also suggests that the SRP was not an ERISA plan.[66]

Third, although the SRP did not state clearly that stock options were granted on the basis of work performed, its structure so suggests because stock options were distributed incrementally, subject to exercise over 10-year periods.[67]  Courts that have analyzed plans with similar provisions have held that they were not subject to ERISA.[68]  Moreover, the Swenson

---

[63]

SRP, at 1.

[64]

See, e.g., *Hahn v. Nat'l Westminster Bank, N.A.*, 99 F. Supp. 2d 275, 280 ("The Plan's express statement of purpose . . . is entitled to weight when determining the nature of the plan.").

[65]

SRP, at 1.

[66]

See, e.g., *Oatway*, 325 F.3d at 188-89; *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575-76 (5th Cir. 1980).

[67]

SRP, at 1-2.

[68]

See *Foltz v. U.S. News & World Report, Inc.*, 627 F. Supp. 1143, 1164 (D.D.C. 1986) (no ERISA plan where "stock awards were made to employees at regular intervals and were based upon services rendered by the employees . . . [and thus] were essentially current compensation and, hence, not the kind of deferred or retirement income contemplated by ERISA").

Memorandum suggests that stock options were awarded as compensation for work performed.[69]

Fourth, plaintiffs argue that SRP benefits were "systematically deferred" until retirement because BAH estimated that the book value of its SRP shares would increase 10 percent annually[70] and that this projected increase encouraged officers to hold their shares until retirement.[71] The SRP, however, allowed officers to sell shares during their tenure at BAH.[72]  The fact that these plaintiffs chose not to did not transform a compensation plan designed to create wealth and reward employees who worked at BAH for many years into a retirement plan.[73]  Several courts faced with similar plans – and plans that included stronger selling restrictions or disincentives than BAH's – have held that bonus plans do not become an ERISA plans just because executives used them as a source of retirement funds.  For example, in *Foltz*, employees could not sale their shares until they separated from the company, yet this fact was insufficient to establish that the stock plan was subject to ERISA.[74]  Cases from various circuits confirm that the SRP should not be considered an ERISA

---

[69]

    Giltner Decl., Ex. G [hereinafter "Swenson Memorandum"], at 1 ("In the simplest of terms, more stock means less cash income annually for the partners.").

[70]

    *Id.* at 4.

[71]

    *See* DI 30, at 6 ("Most significant of all surrounding circumstances is that the Stock Rights Plan operated in such a manner that no shareholder ever sold or otherwise obtained value for his shares until after termination of employment.").

[72]

    SRP, at 4 (BAH shareholders could "dispose of any shares of Common Stock while still an employee of the Company").

[73]

    Swenson Memorandum, at 1; SRP, at 1.

[74]

    *Foltz*, 627 F. Supp. at 1164-65 (a stock plan which restricted executives from selling their shares until after retirement was not subject to ERISA).

plan simply because officers chose to hold their shares until retirement.[75]  Accordingly, SRP benefits were not "systematically deferred" until retirement.

Fifth, BAH did not represent that the SRP was an ERISA plan or a plan designed to provide retirement income.  As noted elsewhere, the express purpose of the SRP was "to provide incentives for . . . Officers to continue to serve as employees of the Company. . . ."[76]  Moreover, the Swenson Memorandum stated that "[t]he primary purpose of the stock program [was] to provide capital to the firm. The secondary purpose [was] to provide a wealth creation vehicle for the partners."[77]  Thus, BAH did not promote the SRP as an ERISA plan.

Sixth, plaintiffs argue that penalties were imposed on officers if they attempted to sell their shares before retirement in that those who sold stock before retirement forfeited "all rights to exercise all options under all grants that had not been exercised at the time of [the] sale of stock."[78]  Courts that have considered similar plans, however, have disagreed with plaintiffs'

---

[75]

*See, e.g.*, *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) ("Plaintiff argues that because a sales representative can defer payment of bonus and interest allocations until the termination of employment . . . the GCBP qualifies as an [ERISA plan] . . . . We disagree. The plan permits a sales representative to withdraw the vested portion of her/his allocations at any time during the course of her/his employment; it does not provide for the systematic deferral of payment."); *Houston v. Aramark Corp.*, 112 Fed. Appx. 132, 136 (3d Cir. Oct. 1, 2004) ("Though Aramark was a privately held corporation, and though the Stockholders' Agreement placed restrictions on the transferability of shares, the deferral of payment for shares from exercised stock options . . . was not systematic. It was simply Houston's choice not to sell his 117,000 shares before he retires . . . . That Houston's retirement triggered Aramark's option to call his shares does not change the analysis.").

[76]

SRP, at 1.

[77]

Swenson Memorandum, at 1.

[78]

DI 30, at 7.

proposed conclusion.  In *Johnson v. TCOM Systems, Inc.*,[79] for example, the court held that a plan was not subject to ERISA even though stock options had to be exercised incrementally according to a schedule and only shares could be sold prior to retirement.[80]  The fact that BAH officers could not exercise all stock options during their employment therefore does not necessarily mean that the SRP operated as an ERISA plan.

        Taking all of these factors together, this Court concludes that the SRP was not an ERISA plan.  Its purpose was to provide BAH officers with compensation and a wealth creation vehicle and to promote extended employment among certain top-level executives.  It was not designed to be, and did not operate as, a retirement plan.  Accordingly, all ERISA claims brought pursuant to the SRP must be dismissed.[81]

IV.    *ERISA Claims Brought in Relation to the SSP*

        The ERISA claims based on the SSP are brought only by Kocourek because he is the only plaintiff that participated in it.  He asserts six claims for relief under the statute: (1) a claim

---

[79]

        No. Civ. A. No. 89-0311, 1989 WL 517870, at *2-3 (D.D.C. Dec. 19, 1989).

[80]

        *Id.* at 3 ("In sum, Johnson's stock bonus plan was one where, on an annual basis and at the occurrence of other specified events, Johnson was free to sell immediately an increasing quantity or all of his stock . . . . This plan does not track the definition ERISA employee pension benefit plan under the regulations and so is not subject to ERISA's provisions.").

[81]

        Several courts have determined whether a plan is covered by ERISA at the motion to dismiss stage by examining the terms of the plan.  *See, e.g.*, *Oatway*, 325 F.3d at 185-86; *Hahn*, 99 F. Supp. 2d at 277.

        As this Court holds that all claims brought pursuant to the SRP must be dismissed, there is no need to address the BAH Defendants' other arguments in support of dismissing the ERISA claims based on the SRP.

under Section 502(a)(1)(B) to enforce his alleged rights under the SSP (Count 4),[82] (2) a claim under Section 510 for alleged wrongful expulsion from the SSP (Count 5),[83] (3) a claim for alleged benefits under Section 502(a)(1)(B) (Count 9),[84] (4) a claim against the BAH Defendants for failing to provide information under Section 502(c)(1) (Count 11),[85] (5) a breach of fiduciary duty claim under Section 406 (Count 12),[86] and (6) a claim on behalf of the SSP against the BAH Defendants for participating in an allegedly prohibited transaction under Section 502(a)(3) (Count 14).[87]

The BAH Defendants rejoin that: (1) the SSP was not an ERISA plan, (2) even if it was, it was a "top-hat" plan and thus exempt from certain fiduciary duties, and (3) Kocourek is precluded from bringing these claims because he previously brought claims in New York state court based on the same factual allegations.[88]  The Court considers each argument.

A.    *Was the SSP an ERISA Plan?*

The SSP granted certain BAH officers rights to post-retirement payments that were designed to be equivalent to the proceeds they would have received had they participated in the SRP.

---

[82]    29 U.S.C. § 1132(a)(1)(B); *see* Cpt. ¶¶ 388-91.

[83]    29 U.S.C. § 1140; *see* Cpt. ¶ 406.

[84]    29 U.S.C. § 1132(a)(1)(B); *see* Cpt. ¶¶ 434-35.

[85]    29 U.S.C. § 1132(c)(1); *see* Cpt. ¶¶ 444-45.

[86]    29 U.S.C. § 1106; *see* Cpt. ¶ 471.

[87]    29 U.S.C. § 1132(a)(3); *see* Cpt. ¶ 482.

[88]    DI 23, at 12-14, 22-28.

There were, however, a few differences between the plans.

First, under the SSP, officers earned "shadow stock" – contractual rights that were equivalent, more or less, to stock options received under the SRP because the "book value" of the shadow stock followed BAH's book value.[89]

Second, unlike the SRP, no documentation about the SSP's terms has been provided beyond the details listed above and those alleged in the consolidated complaint.[90]

As no further documentation regarding the SSP is before the Court, it is impossible to determine on this motion the stated purpose of the SSP, whether the benefits were discretionary, how the SSP was marketed to shareholders, or the specific structure of the plan.[91]  The Court therefore cannot conclude at this stage that the SSP was not an ERISA plan.[92]

### B.       Was the SSP a "Top-Hat" Plan?

Assuming *arguendo* that the SSP was covered by ERISA, the BAH Defendants assert

---

[89]

        Cpt. ¶¶ 148, 152 ("The Shadow Stock Plan is a deferred compensation plan whereby payment of a cash bonus is explicitly deferred until at least separation of service and retirement . . . .").

[90]

        *Id.* ¶¶ 164-66.

[91]

        *Id.* ¶ 445 ("Defendant BAH has advised Kocourek that it holds other documents which refer to the shadow stock program but has withheld same from discovery . . . .").

[92]

        Similarly, because of the lack of evidence about the SSP presented at this stage, this Court cannot conclude that the SSP was an ERISA plan.  Accordingly, defendants' arguments that Kocourek's common law and state law claims must be dismissed on the basis of ERISA preemption must be rejected as well, at least for the present.  *See, e.g.*, *Aiena v. Olsen*, 69 F. Supp. 2d 521, 531 (S.D.N.Y. 1999).

that it must have been a top-hat ERISA plan.[93]  If they are correct, the BAH Defendants would be exempt from ERISA's fiduciary duty requirements, and Count 12, which alleges that the BAH Defendants breached their fiduciary duties with regard to the SSP, would have to be dismissed.[94]

A top-hat plan is "'a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.'"[95]  Although the consolidated complaint speculates that the SSP "could be a 'top-hat' unilateral contract plan," it does not allege that its primary purpose was to defer compensation.[96]  To the contrary, plaintiffs allege that the SSP was designed to provide retirement income.[97]

As no additional documentation regarding the SSP is before the Court, it cannot conclude at this stage that the SSP was a top-hat plan, assuming it was an ERISA plan at all.  Count 12 therefore survives the motion to dismiss.

### C.    Are Any of Kocourek's ERISA Claims Precluded?

The BAH Defendants assert that many of Kocourek's ERISA claims are barred

---

[93]

DI 23, at 28-29.

[94]

29 U.S.C. § 1101(a)(1); *see, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 108 (2d Cir. 2008); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 290 (2d Cir. 2000) ("[T]he fiduciary responsibility provisions of ERISA do not apply to top hat plans . . . .").

[95]

*Healy v. Rich Prods. Corp.*, 981 F.2d 68, 72 (2d Cir. 1992) (quoting 29 U.S.C. § 1051(2)).

[96]

Cpt. ¶ 14.

[97]

*See id.* ¶¶ 14, 148-52.

because he brought a previous action in New York state court alleging breach of contract, unjust enrichment, and fraud claims against BAH related to the redemption of his SSP rights.[98]

The central basis of Kocourek's state court complaint was that BAH wrongfully forced him to surrender his SSP rights immediately upon retirement instead of allowing him to redeem those rights two years later and thus after the Carlyle Transaction.[99]   The state court dismissed the breach of contract and unjust enrichment claims on statute of frauds grounds, and Kocourek discontinued his fraud claims with prejudice.[100]

As the preclusive effect of a state court judgment is governed by the law of the state in which the judgment was rendered, this Court applies New York law to this claim preclusion analysis.[101]   Under New York law, the doctrine of claim preclusion "provides that [a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action."[102]   According to the Second Circuit's test, a subsequent claim is precluded when (1) there was "a final judgment on the merits, (2) by a court of competent

---

[98]

See Kocourek, 71 A.D.3d at 511, 900 N.Y.S.2d at 1.

[99]

Giltner Decl., Exs. C & D [hereinafter "State Court Complaint" & "State Court Judgment" respectively].

Generally, claim preclusion is an affirmative defense that is included in a defendant's answer.  When court records, however, show the relevant facts at issue, a court may take judicial notice of the prior court records, and the claim preclusion defense may be upheld on a Rule 12 motion.  See Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992).

[100]

Kocourek, 71 A.D.3d at 511, 900 N.Y.S.2d at 1; see DI 23, at 12.

[101]

See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).

[102]

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 195 (2d Cir. 2010); see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997).

jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."[103]  With regard to the fourth factor, New York law allows "a later claim arising out of the same factual grouping [to be precluded] . . . even if the later claim is based on different legal theories or seeks dissimilar or additional relief"[104] as long as the initial forum had "the power to award the full measure of relief sought in the later litigation."[105]

First, there was a "final judgment on the merits" in the prior state court action.[106] Kocourek's breach of contract and unjust enrichment claims were dismissed on statute of frauds grounds, and he withdrew the fraud claims with prejudice.[107]  Both of these dispositions were final judgments on the merits for purposes of claim preclusion.[108]

---

[103]

*In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011)  (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)).

[104]

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *Smith v. Russell Sage Coll.*, 429 N.E.2d 746, 445 N.Y.S.2d 68, 71 (1981).

[105]

*Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *McLearn v. Cowen & Co.*, 422 N.Y.S.2d 60, 61 (1979).

[106]

State Court Judgment, at 4; *see also Kocourek*, 900 N.Y.S.2d at 1 (affirming the trial court's dismissal of Kocourek's claims on statute of fraud grounds).

[107]

*Kocourek*, 71 A.D.3d at 511-12, 900 N.Y.S.2d at 1-2; DI 23, at 12.

Even though Kocourek asserts that an appeal of the state court judgment is pending in the Appellate Division, the existence of a pending appeal does not alter the claim preclusion analysis.  *See Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (claim preclusion applies "once final judgment is entered in a case, even while an appeal from that judgment is pending") (citing *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988)).

[108]

*See Laudau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 13 n.3 (2008) ("dismissal based on . . . statute of frauds grounds . . . is equivalent to a determination on the merits"); *Oak Beverages, Inc. v. TOMRA of Mass., L.L.C.*, 96 F. Supp. 2d 336, 351 (S.D.N.Y. 2000) ("voluntary discontinuance with prejudice . . . constitutes a final judgment on the merits" for

Second, under Section 502(e)(1) of ERISA, "the district courts of the United States . . . have exclusive jurisdiction of civil actions" brought under ERISA, except that "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of . . . section [502].[109] Thus, to the extent that Kocourek alleges ERISA claims on the basis of Section 502(a)(1)(B), those claims could have been raised in New York state court.

Third, in his prior action, Kocourek brought claims against BAH and Booz & Co., Inc.[110] Here, the BAH Defendants include BAH as well as various of BAH's officers.  It is well-established, however, that a corporation is in privity with its officers, directors, and other agents for the purposes of claim preclusion.[111]  Accordingly, the third factor of the claim preclusion analysis is satisfied.

Fourth, even though Kocourek did not allege ERISA claims in his state court action, his state court claims relied on and involved the same factual circumstances.  Indeed, the state court judgment noted that Kocourek asserted that: (1) BAH breached the terms of the SSP by requiring him to sell his shares at retirement, and (2) he did not receive the benefits he deserved under the plan by virtue of the Carlyle Transaction.[112]  Thus, the fourth factor is met as well.

---

[109] claim preclusion purposes).

29 U.S.C. § 1132(e)(1).

[110] State Court Judgment, at 1.

[111] See, e.g., Miller Realty Assocs. v. Amendola, 51 A.D.3d 987, 859 N.Y.S.2d 258, 261 (2d Dep't 2008).

[112] State Court Judgment, at 1-4; State Court Complaint ¶¶ 40-41, 47.

Accordingly, Kocourek's claims in Counts 4 and 9 are precluded by the judgment in his prior state court action.  Kocourek's other claims, based on Sections 510 (Count 5), 502(c)(1) (Count 11), 406 (Count 12), and 502(a)(3) (Count 14) of ERISA, survive the BAH Defendants' motion to dismiss to the extent that they are based on the SSP.[113]

## V.     *Breach of the Implied Covenant of Good Faith and Fair Dealing*

All plaintiffs claim that the BAH Defendants breached their implied covenant of good faith and fair dealing.[114]  Kocourek alleges that the BAH Defendants breached this covenant by forcing him to redeem his SSP rights when he retired instead of allowing him to redeem them after two years – as the SRP permitted.[115]  Similarly, Pasternack and Boudinot assert that the BAH Defendants frustrated the purpose of the SRP by forcing them to sell their shares while negotiations with the Carlyle Group were going on and before they could receive any benefit from the Carlyle Transaction.[116]  These two claims are considered separately.

First, Kocourek's common law breach of good faith and fair dealing claim, which overlaps substantially with his claims under Section 502(a)(1)(B) of ERISA, is precluded because

---

[113]

The BAH Defendants argue that none of Kocourek's claims is sufficient in light of a release he signed when he sold the shares he earned under the SSP.  This release, however, is not mentioned in the consolidated complaint.  Accordingly, this Court has not considered it for the purposes of these motions to dismiss.

[114]

Cpt. ¶¶ 410-11.

[115]

*Id.* ¶¶ 410, 413.  The consolidated complaint alleges also that senior managers at BAH made oral representations that all the terms and conditions of the SRP would apply to the SSP.  *Id.* ¶ 161.

[116]

*Id.* ¶¶ 416-17.

it could have been alleged in his prior state court proceedings.[117]  Kocourek there alleged that: (1) "BAH forced him to redeem his 26,700 shares of shadow stock, claiming that the shadow stock plan required the shares to be redeemed upon retirement," (2) "the common stock plan, by contrast, permitted shareholders to hold their shares for up to two years after retirement," and (3) "[d]ue to Booz Allen's failure to honor its commitments . . . Mr. Kocourek lost . . . economic benefit[s] of $21,292, 449."[118]  Those same allegations form the basis of his common law breach of good faith and fiduciary duty claim here, and thus, it is precluded.

Second, Pasternack's and Boudinot's breach of good faith and fair dealing claims lack merit.  Indeed, comparable claims brought by different individuals were rejected by the Delaware Supreme Court in a previous case.[119]  Simply put, Pasternack's and Boudinot's common law claims fail because they received exactly the benefits they bargained for under the SRP.[120]  The SRP provided that officers could hold their shares for two years after retirement, and Pasternack and Boudinot acknowledge that they were given that two-year period.[121]  As the Delaware Supreme Court noted, "[t]he directors did nothing unfair and breached no fiduciary duty by causing the

---

[117]

The complete analysis of all of the claim preclusion factors is provided above. *See supra* Section IV.C.

[118]

State Court Judgment, at 3; State Court Complaint ¶¶ 1-2, 53.

[119]

*See Nemec*, 991 A.2d at 1127.

[120]

*See id.* at 1126 ("The Chancellor found no cognizable claim for a breach of the implied covenant because the Stock Plan explicitly authorized the redemption's price and timing, and Booz Allen, [and the plaintiffs] received exactly what they bargained for under the Stock Plan.").

[121]

SRP, at 4; *see* Cpt. ¶¶ 126, 140.

Company to exercise its absolute contractual right to redeem the retired stockholders' shares at a time that was most advantageous to the Company's working stockholders."[122] Thus, Count 6 is dismissed as to Pasternack and Boudinot.

## VI.    *Common Law Fraud*

In Count 8, Kocourek raises a second common law claim based on alleged misrepresentations made by Individual BAH Defendant Shrader about the lack of a "strategic transaction" in BAH's near future.[123]  Kocourek alleges that he relied on these statements, chose to retire, and suffered harm because he was forced to redeem his SSP rights before the Carlyle Transaction.[124]

Like Kocourek's other common law claim, this one is precluded because the claims Kocourek alleged in his prior state court action involved the same set of facts.[125]  Although Kocourek's state court complaint does not allege specifically that Shrader misrepresented the lack of a "strategic transaction," his claims arose from the same factual events, including his unfortunately-timed retirement and his corresponding inability to receive the additional profits that stemmed from the Carlyle Transaction.  Moreover, Kocourek asserted fraud claims against BAH in his state court action and alleged that "due to [BAH's] misrepresentations, Mr. Kocourek lost .

---

[122]

*Nemec*, 991 A.2d at 1127.

[123]

Cpt. ¶¶ 425, 427.

[124]

*Id.* ¶ 428.

[125]

Again, the full claim preclusion analysis is provided above.  *See supra* Section IV.C.

. . economic benefit[s] of $21,292, 449."[126]  Accordingly, Kocourek's common law fraud claim is precluded and must be dismissed.

## VII.    *State Law Aiding and Abetting*

Finally, Kocourek, as purported representative of the SRP and SSP, alleges a state law aiding and abetting claim against the Carlyle Defendants (Count 13).[127]  In response, the Carlyle Defendants contend that any state law claim brought on behalf on an ERISA plan is preempted and, in any event, that plaintiffs fail to state an aiding and abetting claim under state law.[128]

As noted above, the Carlyle Defendants' preemption argument is unpersuasive.[129]

---

[126]

State Court Complaint ¶¶ 1-2, 53.

[127]

In support of their motion to dismiss, the Carlyle Defendants assert that this aiding and abetting claim is confused insofar as the consolidated complaint appears to allege this claim on the basis of state law as well as ERISA.  DI 24, at 10.  Plaintiff's opposition to the motion fails to clarify this point.  DI 31, at 18-21.  On its face, the consolidated complaint appears to allege the aiding and abetting violation under state law, and thus, this Court considers it on that basis.  Cpt. ¶¶ 472-76 (alleging that the directors of a Delaware corporation breached various fiduciary duties and that "ERISA does not preempt state claims").

To the extent that Count 13 is raised pursuant to ERISA, however, it must be dismissed because courts have held that there is no cause of action under ERISA for participation by a non-fiduciary in an alleged fiduciary breach.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) (expressing reservations as to whether such a cause of action could exist when there is a lack of any reference to relief against non-fiduciaries in the remedial sections of the statute); *Reich v. Continental Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994), *cert. denied*, 513 U.S. 1152 (1995); *Reich v. Rowe*, 20 F.3d 25, 31 (1st Cir. 1994); *see also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 148 (2d Cir. 1999) (ERISA "appears to reflect a deliberate decision not to create remedies against nonfiduciaries").

[128]

DI 24, at 10-13.

[129]

*See supra* note 92.

The Court therefore considers whether Kocourek states a cause of action under Delaware law[130] – in this instance, whether he alleges: (1) facts that establish the existence of a fiduciary relationship, (2) a breach of that duty, (3) knowing participation in the breach by a defendant who is not a fiduciary, and (4) damages proximately caused by the breach.[131]

The Carlyle Defendants argue, *inter alia*, that Kocourek fails to allege that they had any "knowing participation in the breach"[132] because he alleges only that the Carlyle Group purchased BAH's government sector for 50 percent to 60 percent of its fair value.[133]  Although the consolidated complaint alleges that the transaction must have been fraudulent because of the low purchase price, it provides no support that the Carlyle Defendants did anything other than try to negotiate the lowest possible purchase price.[134]  These allegations demonstrate nothing more than "a bidder's attempts to reduce the sale price through arm's-length negotiations."[135]  Such conduct "cannot give rise to liability for aiding and abetting . . . ."[136]

---

130

      The SRP is governed by the law of Delaware.  SRP, at 7.

131

      *See, e.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

132

      DI 24, at 10-14.

133

      Cpt. ¶¶ 5, 8.

134

      *Id.* ¶¶ 252-70.

135

      *See Morgan v. Cash*, No. 5053-VCS, 2010 WL 2803746, at *4 n.38 (Del Ch. July 16, 2010) (quoting *Malpiede*, 780 A.2d at 1097).

136

      *See id.*; *see also In re Frederick's of Hollywood, Inc. S'holders Litig.*, No. 15944, 1998 WL 398244, at *4 (Del. Ch. July 9, 1998) ("[A]n offeror who conducts arm's-length negotiations leading to an acquisition agreement cannot be said to be knowingly participating in an alleged breach of fiduciary duty by the target board.").

More could be said on the deficiencies of this claim, but the foregoing suffices. Count 13 is dismissed.

## VIII.   Remaining Claims

The consolidated complaint contains four causes of action against defendants (Counts 10, 15, 16, and 17), which, in fact, do nothing more than seek particular remedies for claims alleged elsewhere.  Count 10 seeks attorney's fees; Count 15 an injunction to compel enforcement; Count 16 disgorgement, recision, and restitution; and Count 17 the appointment of an equitable receiver.  As all substantive claims are dismissed against the Carlyle Defendants, all claims for relief alleged against them (Counts 15 and 16) are dismissed as well.  Furthermore, to the extent that various claims for relief are brought pursuant to the SRP (Counts 10 and 15), they are dismissed.  Finally, Count 15 is dismissed in its entirety because plaintiffs allege no irreparable harm that would justify injunctive relief.[137]  Accordingly, the only claims for relief that survive the motions to dismiss are Counts 10, 16, and 17 to the extent that they are brought pursuant to alleged violations of the SSP.

### Conclusion

For the foregoing reasons:

1.)   The Carlyle Defendants' motion to dismiss [DI 20] is granted and the action dismissed as to them.

2.)   The motion of the BAH Defendants to dismiss [DI 21] is granted to the

---

[137]

Cpt. ¶¶ 483-87; *see Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (holding that money damages alone cannot support a finding of irreparable harm).

following extent:

        a.)   Insofar as the action is brought on behalf of plaintiffs Pasternack and

Boudinot, it is dismissed.

        b.)  Counts 1 though 4, 6 through 9, and 15 and the ERISA claims asserted

in Counts 5, 10, 16, and 17 based on the SRP are dismissed.

It is denied in all other respects.

        SO ORDERED.

Dated:        February 15, 2012

                               Lewis A. Kaplan
                           United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)